UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GARY LA BARBERA and				REPORT AND
FRANK FINKEL,					**RECOMMENDATION**

               Plaintiffs,			06 CV 0813 (FB)

- against -

GOLDEN VALE CONSTRUCTION CORP.,

               Defendant.
-----------------------------------------------------------X

      Plaintiffs, Trustees of Local 282 of the International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the "Funds"), filed this action on February 24, 2006 against defendant Golden Vale Construction Corp., ("Golden Vale") pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), seeking to recover delinquent contributions owed to the Funds. Plaintiffs also seek a permanent injunction requiring defendant to submit the required contribution reports and payments in accordance with the rules of the Fund, for so long as it remains obligated.

      When defendant failed to file an answer or otherwise move with respect to the Complaint in a timely manner, the Clerk of the Court entered a default with respect to this action on April 14, 2006. By Order dated May 19, 2006, the Honorable Frederic Block, United States District Judge, entered a default judgment against defendant and referred the matter to the undersigned to conduct an inquest on damages.

## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multi-employer benefit plan trusts that provide fringe benefits to employees performing services within the jurisdiction of Local 282 of the International Brotherhood of Teamsters (the "Union"). (Compl. ¶¶ 2-4).[1] Defendant is a corporation with its principal place of business located in Maspeth, New York and a signatory to a Collective Bargaining Agreement with the Union (the "CBA"). (Id. ¶ 6, 8).

According to the Affirmation of Avram H. Schreiber, Esq., submitted in Support of Plaintiffs' Claim for Damages, dated June 23, 2006 ("Schreiber Damages Aff."), defendant entered into a CBA that covered the period of July 1, 1996 through June 30, 1999. (Schreiber Damages Aff. ¶ 3; Ex. A). Thereafter, the parties entered into a Memorandum of Agreement extending the terms of the CBA for the period of July 1, 1999 through June 30, 2005. (Id. ¶ 4; Ex. B). Pursuant to an "evergreen clause" in the contract, defendant is bound to the terms of the CBA unless defendant provides plaintiffs with written notice 60 days prior to the expiration of the CBA of the employer's intent not to sign a new contract. (Id. ¶ 6; Ex. C). Plaintiffs contend that not only has defendant not submitted the requisite written notification, but indeed, defendant continued to submit remittance reports and to make payments of benefit contributions in accordance with the CBA for the months of July, August, and September 2005. (Id. ¶¶ 7, 8; Ex. D). Given these circumstances, it appears that the defendant continues to be bound by the terms of the CBA. See, e.g., Brown v. C. Volante Corp., 194 F.3d 351, 355 (2d Cir. 1999), cert. denied, 529 U.S. 1004 (2000) (enforcing unsigned CBAs because employer's conduct manifested an intent to adopt their terms); La Barbera v. Les Sub-Surface Plumbing, Inc., No. 03 CV 6076,

---

[1] Citations to "Compl" refer to the Complaint filed in this action on February 24, 2006.

2006 WL 3628024, at *4 (E.D.N.Y. Dec. 11, 2006) (finding that an employer had manifested the intent to be bound by an unsigned CBA via its submission of monthly remittance reports); Building Service 32B-J Pension Fund v. Vanderveer Estates Holding, LLC, 127 F. Supp. 2d 490, 495 (S.D.N.Y.) (finding defendant bound to the terms of a CBA due to an "evergreen clause"), denying reconsideration, 2001 WL 243534 (S.D.N.Y. May 7, 2001).

Pursuant to the CBA, defendant is required to pay fringe benefit contributions to the Funds based on work performed by the individual employees of defendant. (Id. ¶ 8). Defendant is also required to file monthly report forms and to allow plaintiffs to examine and audit the pertinent payroll books and records of the defendant to insure that the proper number of hours are credited to the individual employees. (See id. ¶¶ 24, 25; see also Schreiber Damages Aff. ¶ 12). Pursuant to the CBA, plaintiffs may conduct such an examination and audit whenever plaintiffs deem it necessary to ensure the accuracy of defendant's payments to the Funds. (See Schreiber Damages Aff., Ex. C at 27). Despite its obligations under the CBA, defendant failed to remit reports or to pay contributions for the months beginning October 2005 through December 2005. (Schreiber Damages Aff. ¶ 9). Plaintiffs have determined that defendant owes the Funds $80,326.09 for the period of October 2005 through December 2005. (Schreiber Aff. ¶ 6).[2] Since then, defendant has continued to fail to pay contributions for the period of January 2006 through April 2006, totaling an additional $90,093.32, for a grand total of $170,419.41 due in delinquent contributions and late fees. (Schreiber Damages Aff. ¶¶ 9-10).

On February 24, 2006, plaintiffs filed this action seeking an award of the delinquent

---

[2]Citations to "Schreiber Aff." refer to the affirmation of Avram H. Schreiber, Esq., in support of Default Judgment and Permanent Injunction, dated March 21, 2006.

3

contributions plus interest, liquidated damages and attorneys' fees as authorized by 29 U.S.C. § 1132. When defendant failed to answer, plaintiffs filed a request for entry of a default judgment that was entered by Order dated May 19, 2006. That Order also referred the matter to this Court to calculate damages and costs.

Following referral of the inquest, the undersigned issued an Order, dated May 23, 2006, directing the parties to submit papers in support of their damages calculations by June 23, 2006. Although the Court has received plaintiffs' submissions, defendant has not filed papers nor contacted the Court to request additional time.

## DAMAGES

A. Default Judgment Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be

established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, where the plaintiffs have filed reasonably detailed affirmations and exhibits pertaining to the damages incurred and where the defendant has failed to make an appearance in the case, the court can make an informed recommendation regarding damages without an evidentiary hearing.

B) Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). In addition to unpaid contributions, the statute provides for an award of:

> (A) interest on the unpaid contributions,
> (B) an amount equal to the greater of--
>    (i) interest on the unpaid contributions, or
>    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(C) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(D) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). See also Iron Workers Dist. Council of W. New York and Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995).

According the Declaration of Trust that governs the various Funds in this action, the employer is obligated to pay delinquent fringe benefit contributions, along with certain designated late charges whenever the employer fails to report and pay contributions promptly after they become due. (Schreiber Damages Aff. ¶ 11, Exs. F, G). Pursuant to an amendment to the Restated Agreement and Declaration of Trust (the "Declaration") adopted on October 29, 2003, interest on unpaid contributions is calculated at 18% per annum. (Id., Ex. F). In addition, where contributions remain unpaid at the time of commencement of the suit, plaintiffs are entitled to the greater of the interest on the unpaid contributions or liquidated damages calculated at the rate of 20% of the delinquency, plus reasonable attorneys' fees. (Id., Exs. F, G at 31).

1) Delinquent Contributions

In calculating the amount of delinquent contributions owed, the Declaration provides that in the absence of remittance reports, the Trustees may compute the amount due by adding 10% to the number of hours for the month in which the largest number of hours were reported in the prior twelve positive reports provided by the employer. (Schreiber Damages Aff. ¶ 12; Ex. H at 28). Plaintiffs represent that for the period of October 2005 through April 2006, the largest

number of hours reported was in December 2004. (Id. ¶ 13; Ex. I). Based on the report submitted, it appears that contributions are owed to four plans - - Welfare, Pension, Annuity and Job Training Funds - - in the amount of 807.4 hours each. (Id.) At the rates provided, plaintiffs are owed $19,379.62 per month, for a total of $135,657.34. (Id. ¶¶ 14-18; Ex. E).

Having reviewed the Schreiber Damages Affirmation, the remittance report attached thereto, and the calculations performed in accordance with the formula set forth in the Trust Agreement, the Court respectfully recommends that plaintiffs be awarded a total of $135,657.34 in delinquent contributions.

### 2) Calculation of Interest

In their application, plaintiffs also seek an award of interest that accrued for the period of delinquency calculated from the date the contributions were due until June 22, 2006 in the amount of $7,630.63. (Schreiber Damages Aff. ¶¶ 11, 18). Under the terms of the Trust Agreement and 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest for the period of delinquency. (Id. ¶ 11, Ex. F). The Amended Trust Agreement provides for interest to be calculated at the rate of 18% per annum for the relevant months. (Id.)

Having reviewed the Schreiber Damages Affirmation, plaintiffs' calculations, and supporting documentation, this Court accordingly respectfully recommends that plaintiffs be awarded $7,630.63 in interest.

### 3) Liquidated Damages

Plaintiffs also seek liquidated damages calculated at 20% of the delinquent amounts for

these same time periods in the amount of $3,875.92 per monthly period for a total of $27,131.44. (Id. ¶ 18).

Having reviewed the Schreiber Affirmation, the Trust Agreement, supporting documentation, and plaintiffs' calculations, this Court respectfully recommends that plaintiffs be awarded $27,131.44 in liquidated damages for the period of delinquency.

4) Attorneys' Fees

Plaintiffs also seek attorneys' fees in the amount of $6,482.59,[3] representing services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. (Schreiber Damages Aff. ¶¶ 19-21; Ex. J). In accordance with N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted the Schreiber Damages Affirmation, as well as contemporaneous billing records setting forth the dates and amount of time during which services were rendered, along with the name of the attorney and a description of services performed. (Schreiber Damages Aff. ¶ 19; Ex. J).

Specifically, plaintiffs' counsel's affirmation indicates that three attorneys and one paralegal performed services in connection with this matter. (Id.) Their rates are as follows: Avram H. Schreiber, a partner, charging $275.00 per hour; Christina Cruz[4] and Woomee Lee, associates, charging $200.00 per hour; and a paralegal, charging $70.00 per hour. (Id.) The $275.00 hourly rate charged for Mr. Schreiber's work is in keeping with the billing rates of

---

[3]The amount includes costs of $386.33. See discussion infra at 10.

[4]The Court notes that although the Schreiber Damages Affirmation lists Ms. Cruz as working on the case, the time records do not reflect that she billed for any work. Accordingly, the Court has declined to offer a recommendation for Ms. Cruz's hourly rate.

8

similarly experienced attorneys in this district working on comparable matters. See, e.g., King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (awarding attorneys' fees for Mr. Schreiber's time in a default ERISA case at the rate of $275.00 per hour); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (compensating a partner at the rate of $250 per hour for work done on a straightforward ERISA action). It is therefore respectfully recommended that the requested rate of $275.00 per hour for Mr. Schreiber's time be approved.

The rate billed for the time of the associate on the case, however, should be adjusted. Less experienced attorneys in simple actions such as this should be compensated at a lower rate. See, e.g., King. v. STL Consulting, LLC, 2006 WL 3335115, at *78 (awarding $100.00 per hour for a recently admitted associate in an ERISA action); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d at *352-53 (awarding the rate of $150.00 per hour for associates in an ERISA action). Accordingly, reflecting the relative simplicity of the present action, it is respectfully recommended that Woomee Lee, admitted to practice in 2006, be awarded the rate of $140.00 per hour.

The Court additionally recommends that the paralegal be compensated at the reasonable requested rate of $70.00 per hour. See Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *7 (E.D.N.Y. Sept. 26, 2006) (awarding $65.00 per hour for paralegals in an ERISA action); Morin v. Nu-Way Plastering, Inc., No. 03 CV 405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (awarding $75.00 per hour for paralegals).

Having reviewed the description of the 30.9 hours reflected in the billing records submitted by plaintiffs (Schreiber Damages Aff., Ex. J), the Court finds that the time spent on the

matter was reasonable. The award of attorneys' fees, when applying the above recommended rates, is accordingly adjusted to $4,428.70.

In addition, plaintiffs seek an award of costs incurred in litigating this matter in the sum of $386.33. (Schreiber Damages Aff., Ex. J). Having reviewed the documentation submitted in connection with these proceedings, the Court respectfully recommends that plaintiffs' request for costs be granted.

Accordingly, the Court respectfully recommends that plaintiffs be awarded attorneys' fees and costs in the amount of $4,815.03.

## PERMANENT INJUNCTION

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure that defendant complies with the CBA and Declaration of Trust and the requirements of ERISA in the future. (Compl. at 6). A permanent injunction is an appropriate remedy under Section 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639 (2d Cir. 1991), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co., Inc., 2006 WL 2795348, at *9 (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc.,

1996 WL 629564, at *1 (quoting Haitian Centers Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)).

In this case, while defendant has defaulted, plaintiffs have not provided the Court with sufficient documentation in support of their claim for injunctive relief in that they have not demonstrated that the remedy at law is inadequate. There has been nothing submitted to show that an order requiring the payment of contributions will be ignored or that defendant "intends to frustrate any judgment . . . or show 'contempt for the judicial process.'" Id. (citing Rudd v. Advance Bedding Corp., No. 95 CV 2099, 1995 WL 548723 (E.D.N.Y. Sept. 8, 1995) and quoting Laborers Fringe Benefit Funds Detroit & Vicinity v. Northwestern Concrete & Constr., Inc., 640 F.2d 1350, 1353 (6th Cir. 1981)).

Thus, this Court respectfully recommends that plaintiffs' request for a permanent injunction be denied at this time.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs be awarded damages in the amount of $135,657.34 in principal contributions owed; $7,630.63 in interest; $27,131.44 in liquidated damages; and $4,815.03 in attorneys' fees and costs. In addition, the Court respectfully recommends that the court deny the Funds' request for entry of a permanent junction at this time.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.

See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
April 20, 2007

/s/ Cheryl L. Pollak
CHERYL L. POLLAK
United States Magistrate Judge